## Peter Roberts v. Moses W. Field.

*Bounty : Resolutions construed.* The resolutions of the common council of Detroit, of October 1st, 1864, providing for the payment of three hundred dollars bounty to each person who, since September 21st, 1864, had been, or thereafter should be enlisted and credited to any ward in the city, were not intended for the benefit of the wards of the city, but of the individual enlisting, and this bounty is in addition to the amount of ward bounty any ward had undertaken to pay; a contract with any ward, therefore, to fill its quota, would give the contractor no title to the city bounty provided by such resolution to be paid to one who had enlisted and been credited to such ward.

*Evidence: Contract.* Evidence on cross-examination of the plaintiff, that he did not know that defendant had obligated himself to fill the ward, and that defendant did not tell plaintiff so, but that defendant had made such a statement in the newspapers in his own defense, is not sufficient proof, standing alone, of the existence of such a contract, to authorize the defendant to rely upon it as a defense.

*Resolutions construed : Bounty: Furnishing enlisted men.* The resolutions aforesaid, when considered together and in the light of the existing legislation (which is referred to in the preamble) and of the surrounding circumstances, cannot be held to have intended to provide the bounty for the benefit of those only who should furnish persons to enlist, so as to preclude the enlisted man from claiming it where he had enlisted of his own free will and had not been "furnished" by any other person.

27 MICH.—43.

ROBERTS v. FIELD.

One enlisting of his own motion and without the solicitation of another, may well be said to have "furnished" himself, within the meaning of said résolutions.

*Bounty : Assignment : Evidence.* The assignment of the certificate of enlistment and the bounty to be paid thereon, in this case, was held not to be conclusive between the parties, but to be open to explanation by oral evidence like a mere receipt.

*Charge to the jury.* No evidence having been given tending to show any defense to the plaintiff's claim, the jury should have been instructed that if they believed the plaintiff's evidence (which was wholly uncontradicted), they should find a verdict in his favor.

*Heard April 23.    Decided July 11.*

Error to Wayne Circuit.

*Trowbridge & Atkinson,* for plaintiff in error.

*D. C. Holbrook* and *G. V. N. Lothrop,* for defendant in error.

CHRISTIANCY, CH. J.

This was an action of assumpsit brought by Roberts against Field in the Wayne circuit, to recover two hundred and fifty dollars, part of a soldiers' bounty of three hundred dollars allowed by the city of Detroit to persons who enlisted in the army of the United States after the 21st of September, 1864, and were credited to any ward in the city.    No question arises upon the declaration, which is sufficient, if the facts which the evidence tended to show were sufficient to maintain an action.

The evidence tended to show the following state of facts :

On the 26th day of September, 1864, when the plaintiff enlisted, the only bounty payable by the city to men who should then enlist was fifty dollars.    But the fourth ward of the city had undertaken to pay a ward bounty to those who should enlist and be credited to that ward, of three hundred and fifty dollars; and Field was acting as the agent of that ward in procuring enlistments and filling their quota.

Plaintiff, on the morning of the 26th of September, having, without any solicitation of Field, and without having seen him on the subject, made up his mind to enlist in the 24th Michigan infantry; and wishing to be credited to the 4th ward and to obtain the ward bounty allowed by that ward, called at the office of Field, and told him that he wished so to enlist and be credited. Field told him Capt. Dillon was enlisting men for the 24th, and he didn't know that he could have him down there until the afternoon, but said he (Field) could enlist him in something else; but if he would come in the afternoon, he would have Capt. Dillon there, who could enlist him in the 24th. Roberts went away and returned in the afternoon and found Capt. Dillon there, and Roberts then enlisted, in the office of Field, and was credited to the 4th ward. Field then said to Roberts: "I might as well pay you the city bounty (as I am in that line of business) and it will save you the trouble of collecting it;" to which Roberts assented, and Field called him one side, and Roberts then signed a paper which he supposed to be a receipt or certificate for the fifty dollars. Roberts understood and received this as a favor or advance of Field, and a convenience to Roberts, with no intentions of giving any other rights. The paper thus signed would seem to have been a printed form on the back, or at the foot, of the certificate of enlistment, and was in the following form: "For value received, I (or we) hereby transfer and assign to Moses W. Field, or bearer, all my right, title and interest of, in and to, the annexed certificate and the bounty to be paid for my enlistment by the city of Detroit, and all other local bounties; and I hereby direct and order that the said bounties, or bonds, or warrants therefor, be issued and delivered to said Moses W. Field, or bearer, to his own use forever.

(Signed) "PETER ROBERTS.

"In presence of R. S. DILLON."

Roberts admits the payment to him of the fifty dollars city bounty allowed at the time of this enlistment, and of

the three hundred and fifty dollars ward bounty from the 4th ward, which his brother got of Field after Roberts had gone to the front and sent up a certificate from the adjutant that he had arrived there.

But on the 1st day of October, 1864, the common council of the city, in accordance with the resolutions and recommendations of a citizens' meeting that day held, adopted a resolution giving one hundred dollars in cash and two hundred dollars in bonds of the city (making three hundred dollars) to each person who, since the 21st day of September, 1864, had been, or should therefrom be, enlisted and credited to any ward in the city.    This three hundred dollars, however, seems to have been intended, so far as we can judge from the record, to include the fifty dollars previously allowed.    The plaintiff, Roberts, came within this resolution; and Field, on or about the 10th day of October, 1864, on presentation of the instrument signed by Roberts, a copy of which is above given, obtained from the city one hundred dollars in cash and a city bond of two hundred dollars, which he has since negotiated and upon which he received the money.    Roberts having heard of this additional bounty, wrote in October, from the front near Petersburg, to his brother in Detroit to call on Mr. Field and obtain from him the two hundred and fifty dollars balance of the city bounty still due him.    The brother, calling upon Field for that purpose, was told by the latter that the plaintiff had assigned that two hundred and fifty dollars to him; and he therefore declined to pay it. .

Some time in the early part of the winter of 1865, plaintiff having a furlough to attend a court martial at Jackson, came up from Petersburg and called upon Field, at Detroit, for the balance of the city bounty due him, which Field had collected of the city.    Field denied owing him this two hundred and fifty dollars; admitted he had collected it of the city; but claimed it under the paper or assignment above stated, which had been signed by plaintiff; telling him (plaintiff) that he (Field) had taken the risk

of losing it; that it was a fair business transaction, and that he would not pay him any more.

This evidence has in no way been contradicted or controverted; and Field, who was himself sworn as a witness, does not even intimate that it is not true in every particular. But he insists that he had a right to keep the two hundred and fifty dollars, and claims that it was a fair business transaction.

The ground upon which his counsel have undertaken to base this claim, so far as we can comprehend from the brief and arguments in the case, are:

1st. That Field had taken a contract and obligated himself to fill the quota of the 4th ward under the pending call of the President for 500,000 men, and that the ward contributing the bounty of three hundred and fifty dollars per man, he, Field, was bound, at his own risk, to procure the men and fill the quota; and, though not expressly asserted by the counsel, the idea is shadowed forth and is logically involved in the argument and absolutely necessary to make such a supposed contract any ground for retaining the two hundred and fifty dollars, that, as a part of the arrangement or contract with the ward, he was to be allowed any city bounty which the common council might see fit to allow to, or for, men thus enlisting;

2d. That the resolution of the council, of October 1st, giving the three hundred dollars bounty, gave it, not to the enlisted man or for his benefit, but to the person who should furnish the man; and,

3d. That Roberts enlisted and was credited to the 4th ward under this arrangement, and is therefore to be considered as " furnished " by Field, within the meaning of this resolution.

As to the first point, it is sufficient to say, that there is no evidence in the case tending to show any such contract, or any contract on the part of Field, or that he had become bound in any way to fill the quota of the ward. The fact, if it existed, was one which it devolved upon

him to prove. He was himself sworn as a witness, and does not even intimate that any such contract was ever made. All that is said upon the point is by Roberts himself, upon his cross-examination, who, when asked if he did not, at the time of his enlistment, know that Field had obligated himself to fill the ward, says he did not, nor did Field tell him so; but that Field had said so in the papers lately in his defense. And upon this the counsel see fit to rely in their argument, as proof of such a contract.

But if he had made a contract with the ward to fill its quota, this could give him no right to any part of the city bounty of three hundred dollars, unless it was further shown, not only that the ward had contracted that he should have the benefit of any city bounty that might be given on account of the men enlisted and credited to that ward, but that the city, by its common council, had granted this bounty for the relief of the respective *wards*, instead of that of the enlisted *men;* so that, though the ward gave a bounty of three hundred and fifty dollars per man, three hundred dollars was paid by the city, leaving only fifty dollars to be finally met by the ward. Then, by showing he had paid the whole ward bounty himself, or, if first paid by the ward, that he had paid over to the ward this two hundred and fifty dollars, he would have made a good defense.

If such, however, had been the contract, and such the effect of the resolution of the council, why should Field have paid Roberts the fifty dollars? No reason can be suggested entitling Field to the two hundred and fifty dollars of the city bounty which would not equally have entitled him to retain the fifty dollars which he paid over. Nor, in fact, upon the theory he now sets up, does it satisfactorily appear why he had not just as good a right to retain the three hundred and fifty dollars ward bounty, which was as clearly covered by Roberts' assignment as the city bounty. But the resolution of the common council will bear no such construction. There is nothing in it showing that it was intended to relieve any ward in the

city, from paying such ward bounty as it had undertaken to pay. In other words, the resolution shows the intention to pay three hundred dollars per man bounty, without reference, and therefore clearly in addition to, the amount of ward bounty which any ward had undertaken to pay.

The second ground relied upon by the defendant is equally baseless, viz: "That the resolution of the council giving three hundred dollars was intended for the benefit of *those persons only* who should *furnish* persons to enlist, and not for that of the enlisted men."

Some portion of the first resolution may not, upon the first view, seem entirely clear, but when all are read together and carefully considered, the meaning is clear enough.

They read as follows: "*Whereas,* at a meeting of the freemen and electors of the city of Detroit, held in the City Hall in said city, upon the first day of October, 1864, in pursuance of the proclamation of the mayor, and *in accordance with law,* it was voted to raise one hundred and fifty thousand dollars by loan upon the bonds and credit of the city, in order to pay a city bounty of one hundred dollars to each person who, since the 21st of September, 1864, has been, or shall hereafter be, mustered into the military or naval service of the United States, and who shall be credited upon the quota of any ward in the city, under the present call of the President for five hundred thousand men, and also to issue to such persons so mustered, and credited, the bonds of the city, in an additional sum of not to exceed two hundred ($200) dollars, to each such person, therefore, *Resolved,* That his honor the mayor, the chairman of the committee on ways and means, and the controller, be and are hereby directed to have executed, issued and negotiated, from time to time, so much of said first mentioned bonds as shall be necessary to raise sufficient money to pay such sums of one hundred dollars each to such person or persons as shall furnish satisfactory evidence that he or they have furnished a person who has, since the date aforesaid, been,

or who hereafter shall be as aforesaid, mustered and credited, and also to issue to such person or persons as shall furnish satisfactory evidence that he or they have furnished a person, who has, since the date aforesaid, or who shall hereafter be, so mustered and credited, bonds of the city, not to exceed two hundred dollars for each person so mustered and credited, from time to time, as may be necessary.

" *Resolved*, That the controller be and is instructed to keep an account, showing the amount of bounties in cash or bonds, so paid *to persons credited* to each of the several wards of the city.

" *Resolved*, That no bounty in cash or bonds be paid or issued *to any person to be credited, or who is credited* to any ward, the quota of which shall be known to the controller to be full, at the time such person was mustered.

" *Resolved*, That the mayor, the chairman of the committee of ways and means, and the controller, are hereby empowered to fix the form of all the bonds so to be issued, and the respective times of the maturity thereof."

Now, it will be noticed, that by the preamble it clearly appears that these resolutions were intended to be based upon the authority of a vote of the electors of the city, held on the first of October, 1864, in pursuance of a proclamation of the mayor, " and in accordance with law." And it appears also, by the proceedings of the citizens' meeting, given in the record, that the resolution submitted to the meeting to be voted upon, was a resolution adopted by the council on the 20th of September. The law referred to as the authority for the meeting and vote of the electors, would seem to have been the act of February 5th, 1864 (*Laws of 1864, pp. 53 to 59*), which act seems to have been followed, except as to the amount of the bounty voted, that act only authorizing two hundred dollars. But, for the authority to raise the three hundred dollars, reliance was doubtless had upon some future legislation ; and the act of the next session ratified such action.—See *Laws of 1865, pp. 140 to 145.*

Now the first mentioned act only authorized the raising of money to pay *bounties*, as such, to *the person* enlisting. And in this the vote of the electors followed the act. The recital of the action of the meeting of the electors shows the intention of the council to base their action upon the authority of the vote of that meeting. This clearly shows the intention of the council to grant the bounty for the benefit, at least, of the enlisted man; and the second and third resolutions show that, as a general rule, at least, the payments of bounty to whomsoever made, were such as would, in legal effect, be payments made to the men so enlisting. Of course, a payment made to any other person, for their use, or on their account, under a power of attorney, or an assignment, would be a payment in legal effect to them.

And, as it was quite customary not to pay over the bounty to the recruit until he had joined his regiment on the field and sent a certificate to that effect (as was shown in this case), it became customary for the enlisted men to make an assignment on the back of their certificate of enlistment, to some person who could thus draw the bounty in the absence of the party himself. This would be evidence, as between the assignee and the city, that the assignee had paid the soldier his bounty, and this, with the proof of his having joined his regiment, might be considered as evidence that he had, within the meaning of the first resolution, "furnished" such enlisted man. If the resolution can be understood as going beyond this, it can only be construed as intended to cover cases, which sometimes did occur, in which individual citizens, upon their own account and with their own money, had "furnished," or, in other words, hired a man to enlist in the army; a case which, in principle, does not differ from that just mentioned. Disputes might also arise between the enlisted man and others claiming to have hired and paid him to enter the army, or between the person thus assigning and the person claiming the bounty under the assignment, whether the payment

27 MICH.—44.

ought to be made to the one or the other; and hence the propriety of requiring proof, before payment by the city, that the person applying for the payment had furnished the man. And we think it clear, under the resolution, that a man might "furnish" himself to the army as an enlisted man.

Such, we think, is the reasonable construction of the first resolution, considered with reference to the subject matter, the preamble and the subsequent resolutions.

On the other hand, we should be doing injustice to the patriotism of the common council of that day, to attribute to them the intention of granting the bounty without reference to the benefit of the soldier himself, who was to risk his life in defense of his country, should we assume that the object of granting such liberal bounties, for which the property and the energies of the people were to be so heavily taxed, was merely to enable bounty brokers to speculate in the blood and bones of their more patriotic fellow citizens.

The assignment executed by the plaintiff, if it can be construed to apply to any future bounty, though sufficient evidence, as between the defendant and the city, that the bounty had been paid or purchased by defendant, was, considered with reference to the mode of transacting that kind of business, by no means conclusive between the assignee and the plaintiff, but open to explanation by oral evidence like a mere receipt. That evidence was given, and showed clearly that only fifty dollars of the city bounty was, in legal effect, as between the parties themselves, assigned to defendant, and that the balance was received to the plaintiff's use.

As to the third point, we think the plaintiff, within the fair meaning of the resolution, and in view of the evidence in the case, furnished himself as an enlisted man, and as between him and the defendant, he was clearly entitled to the balance of the city bounty of two hundred and fifty dollars. In fact, we see no more plausible ground on which

the defendant could retain this than he would have had to retain the fifty dollars which he paid, or the three hundred and fifty dollars ward bounty.    The court refused to submit the evidence to the jury, and charged them to find a verdict for the defendant.    He would have been much better justified upon the evidence, to have instructed them to find a verdict for the plaintiff for the two hundred and fifty dollars.    But the charge which ought to have been given was, that no evidence had been given tending to establish a defense to the plaintiff's claim, and if they believed the evidence on the part of the plaintiff, which was wholly uncontradicted, they should find a verdict in his favor.

The judgment must be reversed, with costs to the plaintiff in error, and a new trial awarded.

The other Justices concurred.